*C. H. Lee, for appellant.*

---

Cincinnati Southern Railway Company *v.* E. Cummings.

[Abstract Kentucky Law Reporter, Vol. 6—442.]

### Counts in a Petition.

Each count in plaintiff's petition to be good must contain every allegation of fact necessary to constitute a cause of action, but where the answer filed places in issue every material allegation of the petition it supplies any defect that might be made the ground of either a general or special demurrer.

### Estimates of Engineer.

Where a contract for the construction of a railroad provides that, "In consideration of the full and complete performance of the said work to the entire satisfaction of said Thomas Lovett or other principal engineer for the time being, to be evidenced by his certificate, (the company) agree to pay out of their trust funds to the said (contractor) the prices set forth in the schedule, etc., upon the execution of a portion of the work to the satisfaction of the principal engineer for the time being eighty per cent. of his monthly estimates of the relative value of the work performed to the first day of each month

shall be paid on or before the fifteenth day of the same month." It was held that this provision was intended as a means of knowing when the entire work was completed and that these partial estimates were neither final nor conclusive but constituted a mere statement of its relative value.

### Chief Engineer as an Arbiter.

A contract for the construction of a railroad by which a chief engineer is to act as an arbiter between the contractor and the company will be enforced and his final award will be acquiesced in.

APPEAL FROM KENTON CHANCERY COURT.

December 6, 1884.

OPINION BY JUDGE PRYOR:

The appellee Cummings became a successful bidder for the construction of twelve sections of the Cincinnati Southern Railway designated as sections 95, 96, 97, 98, 99, 101, 104, 105, 106, 107 and 108 in Division. He made separate bids on each section and bound himself to complete the same according to the specifications, plans, profiles, sections and drawings exhibited by the engineer of the corporation. The character and kind of work was all classified and a written contract entered into between the parties on the 11th of February, 1874. The work was completed by the appellee who is now claiming as due him and unpaid on his contract the sum of $108,595.89, while the company admits an indebtedness of $37,292.41. The case was heard below and a judgment rendered for $59,188.00 being an excess of $21,889.00 over the amount admitted to be due. Both parties are dissatisfied with the judgment, the appellee praying a cross appeal and the appellant insisting on a reversal, on the original appeal.

The testimony in this case is voluminous, covering nearly twelve hundred pages of closely printed matter and consisting of confused and conflicting statements of the character and extent of the work, its measurement, and cost, with the testimony introduced by each party sustaining his side of the issue raised. The chancellor below saw proper to labor with the entire testimony and to dispense with a reference to his commissioner whose report would certainly have facilitated the understanding of the accounts between these parties. In pursuing the testimony it is manifest that the proof is in many

instances irreconciliable and of such a conflicting character as would not authorize a reversal for either party. It is proper, however, first to consider the questions raised on the pleadings and determine the objections made by counsel for the appellant on this branch of the case.

Where the declaration or petition contains two or more counts each count will be regarded as a separate action, or in other words each count must contain every allegation of fact necessary to constitute a cause of action. It is urged by counsel for the appellant that the petition is defective as to the several counts because they fail to embody the contract and only refer to the contract as stated in aid of the subsequent pleading. The first count in the petition sets forth the contract in full with all of its conditions and stipulations, and alleges the non-performance by the company with distinct and specific statements in itemized accounts filed, showing the true and correct estimates that should have been made and the amount claimed. The other paragraphs as they are called are not really distinct counts but are in the nature of a bill of particulars and constitute a part of the original petition or first count. Besides the answer places in issue every material allegation of the petition and supplies any defect that might be made the ground of either a general or special demurrer.

The principal difference in this case between the parties consists in the measurement and classification of the work that the appellee by his contract undertook to perform.

It is insisted by the appellant that by the terms of the contract the engineer of the company, Thomas H. Lovett, or the principal engineer for the time being, was to be the sole arbiter between the parties when any question of difference originated between them, and that the principal engineer having made the estimates evidenced by his certificate upon which eighty per cent. of the cost of the work had been paid the appellee, estops the latter from making any further claim, and the construction of the contract in this particular is really the principal question involved.

The contract provides that the trustees "in consideration of the full and complete performance of the said work to the entire satisfaction of said Thomas Lovett or other principal engineer for the time being to be evidenced by his certificate, agree to pay out of their trust funds to the said ·E. Cummings the prices set forth in the

schedule, etc.  Upon the execution of a portion of the work to the satisfaction of the principal engineer for the time being eighty per cent. of his monthly estimates of the relative value of the work performed to the first day of each month shall be paid on or before the fifteenth day of the same month."

This provision of the contract was intended only as the means of enabling the trustees to know when the entire work was completed and the amount of monthly payments upon such estimates as might be made out by the engineer of. the company.  His partial estimates were neither final nor conclusive on the appellee as to the amount of the work done, but was a mere statement of its relative value that the company and the appellee might approximate the amount he was to receive as the work progressed.  If there had been no specifications in the contract with reference to the manner in which the amount of these monthly payments were to be ascertained, the usual custom or habit in the prosecution of such work would have prevailed, that is, the engineer in charge of the work would have certified the amount of the work done, its value, and upon that amount eighty per cent. would have been paid by the company.  That the work must be done to the entire satisfaction of the engineer would necessarily follow else no certificate for payment would be given, and certainly no certificate as to its full completion.  There is no clause in the contract by which (where the company and the contractor disagree as to the estimates) in classification or value of the work, the chief engineer is to be the sole arbiter between them, but all we find is that the work is to be completed to the satisfaction of the engineer, which would have been implied if not inserted in the contract.  He was the chief officer of the company and upon his advice and report they must rely.  The trustees were not conversant with such work and it was left to the judgment of the engineer to determine when they should pay and when not.  His judgment was not final as between the company and the contractor and when the latter and the engineer differed there was no arbiter selected by the contract.  Nor should such a construction be given the contract unless the language used is such as to make it plain that it was the intention of the parties.  It was the duty of the engineer to supervise this work in behalf of the company and to make such estimates as would enable the company to make the payments as required by the contract but not to invest the principal engineer with the power to

say by his certificate "this is all the appellee is entitled to receive" and thereby deny to the appellee any remedy for the recovery of the amount he may be entitled to, however just and proper. The contract entered into between these parties specifies particularly the powers conferred on all those connected with it and if the principal engineer is made the final arbiter of the classification, amount and quality of the work we have been unable to find it. No such inference can be drawn or implied power arise from the fact that stipulations in regard to other matters recited in this contract make the chief engineer the final arbiter if the differences contemplated should arise. On the contrary those stipulations indicate clearly that no such power was intended to be conferred on the engineer.

It was provided: 1. That if the plans, specifications and profiles were modified or other work substituted or work directed to be done then the value of the work was to be deducted from or added to the contract and the said Thomas Lovett or other principal engineer for the time being is to ascertain and fix such respective value and amounts whether the same be deducted from, allowed for, or added to the amount to be paid under the contract.

It was also provided that if Cummings became bankrupt, insolvent or delayed in completing his work without the fault of the trustees upon notice the trustees might employ others to do the work and the amount paid Cummings up to that time was considered the full value of the work done and no other claim was to be made by him. It was also provided that if the appellee should be unnecessarily delayed by the trustees in the progress of the work or by their engineer then the appellee was to be compensated and the determination of the principal engineer for the time being shall be binding and conclusive between the parties.

It was further provided that for each monthly or weekly delay of appellee in finishing the work the appellee bound himself to pay to the trustees as liquidated damages an amount out of the moneys coming to him as should be fixed by the principal engineer.

None of these contingencies happened or if so the facts are not found in this record.

The road was finished as the contract required and the certificate of the engineer to that effect obtained, and now the appellee is claiming the money due him on the contract, and the action although in equity is an ordinary action seeking to recover the amount due the

appellee for work, labor, etc., performed under his agreement. It is argued by counsel for the appellant that a Court of Equity had no jurisdiction still we find no motion made to transfer the case to the ordinary docket, and the case must be considered here as it was in the court below.

It is, we think, well settled that a contract made by which a chief engineer is to act as an arbiter between the contractor and the company and his award made final will be enforced.

The court will not, however, imply the existence of such a contract. It must appear in express terms.

In the case of the *Vermont Central Railroad Company v. Baxter,* 22 Vermont 365, the contract contains this provision, "And the engineer shall be the sole judge of the quality and quantity of the work and from his decision there shall be no appeal." There was neither fraud nor mistake alleged and the award of the enginer was held to be conclusive. In *Kidwell v. Baltimore & Ohio Railroad,* 11 Gratton (Va.) 676, there was a stipulation that the final estimate of the engineer "shall be conclusive on the parties."

In the case of *Condon v. Southside Railroad Company,* 14 Gratton (Va.) 302, the engineer was made the arbiter of all disputes and all difficulties arising under the contract. In that case the contract contained the stipulation that as the work progressed the company would pay 80 per cent. of the relative value to be judged of by their engineer. Such case was almost similar to the contract in the case before us, but in that case it was further provided that the engineer "should determine when the contract had been complied with according to its fair and just interpretaton and the amount of the same, and all disputes and difficulties arising under the same, and his decision shall be obligatory and conclusive between the parties without further recourse of appeal."

In the case of *Faunce v. Burke & Condor,* 16 Penn. 469, the contract expressly provided that "the monthly and final estimates as to the quantity, character and value of the work done shall be conclusive between the parties.

The only case we have found bearing on this question conducing to sustain the appellant's construction is that of *Mercer v. Harris,* 1 Brown (Nebr.) 77, where it was held that in a contract for the building of a house, the provision that it was to be done under the direction of an architect and to be certified to by a certificate or

writing under his hand, the architect is thereby constituted the sole arbiter between the parties.

The opinion in the case of *Memphis &c. Railroad Company v. Wilcox,* 48 Penn. 161, presents the correct doctrine on this subject. There the engineer was authorized to make his monthly and final estimates without any declaration as to it being a finality or conclusion. The court held that such estimates had no quality of an adjudication and that all the cases cited (and there were many) rested on positive stipulations in the contract to that effect, and even then the validity of such an express stipulation had been rigorously assailed. It was held in that case that the estimates of the engineer were liable to be met by any competent proof which could disclose its errors and mistakes, if any had been committed.

It would be an endless task to take up the testimony in regard to each item of appellee's claim and present it on both sides of the issue and considering this case alone upon the idea that it is an action for work and labor and materials furnished at certain prices fixed by the contract, it can not be maintained that the weight of the testimony preponderates so strongly for the appellant as to authorize this court to disturb the finding below. In fact much of the labor done and performed in excess of the estimate made by the engineer is admitted by the pleadings, and the claim was denied for the reason that it was for the convenience of the appellee that the work was done, and again that it was necessary and not authorized by the appellant, or if authorized was made necessary by the blunders of the contractor in executing the work.

It also appears that much of the work done by the appellee and for which he is now claiming was estimated by the engineer on the ground as is insisted it should have been by the appellee, and when this was done the estimate was changed by the principal or division engineer.

As to section 95 the engineer on the ground estimated the removal of loose rock excavation that was changed by the division engineer to earth excavation. The engineer on the ground as the work progressed says that his estimates were changed by the division engineer as to these items on section 95. Dry packing, earth excavation and loose rock; one on section 96, dry packing, and one on section 99, loose rock borrowed. This witness says that the division engineer saw this work but once or twice a month while he was present

and saw it in all its phases. (See page 486 of record.) While it was the duty of the division engineer to supervise the work of his subordinates, it was not the duty of the contractor to submit to the change unless the estimates made by the subordinate were erroneous. The division engineer decreased the quantity of dry packing on this section because in excavating the tunnels the contractor was careless in providing timbers for the support of his work and for that reason the dirt tumbled in. He also refused to allow loose rock borrow when, as Engle says, the calculations made entitled Cummings to compensation. It does not appear that the division engineer made any calculation of the material at the time the work was done. The amount of dry packing in excavating these tunnels as claimed by the appellee is not controverted by Meeks, the division engineer, but he declined to allow for the entire work because the necessity for removing it was caused by the contractor for his own convenience. This same witness says that the tunnels were made wider than the regular cross section and that it was not practicable to blow it out precisely to the required cross section. (See Meek's deposition, pages 915-916.) Here was a competent engineer on the ground and the question was whether the tunnel should be widened by merely trimming the sides down or by blasting, the latter course being adopted. The witness thinks it was for the convenience of the contractor and therefore he should not be allowed for it. No neglect is charged upon either the contractor or the resident engineer, and at best it was only a question as to the most practicable course to pursue with reference to the work.

There is also another item for work on this section of 10,500 cubic yards of loose rock borrow. This is explained to be "where material is required to make an embankment in excess of the material taken out of the road bed, it is then necessary to borrow a sufficient quantity from some other place. The engineers call it borrowed material." It is conceded that this work was done but 1,000 cubic yards was deducted for the reason as Meeks maintains the contractor had wasted enough material at one end of the tunnel to have made the embankment at the other end. The engineer was present when this work was done and from the statement of the appellee he was required to begin at the end of the tunnel where this waste of material is said to have been committed and when the tunnel was worked through it was impracticable to transport this material to

the place where it was needed. It is admitted by Meeks that he consented to the waste of certain material at the end of the tunnel at the instance of the sub-contractor, but for the reason that it was worthless and gave no permission to waste any other.

As to section 101 the appellee is allowed for 15,341 cubic yards of earth excavated when there were but 9,742. The excess of earth should have properly belonged to that classification known as "hard pan." This claim is principally sustained by the testimony of Dukes and we are unable to say whether the estimate or classification made by him is or is not correct. The most comprehensive and at the same time satisfactory statement made of the measurement and classification of this work is found in the deposition of the engineer Dickman who from past experience and an actual survey of the work, and in no manner connected with the enterprise has sustained the claim of the plaintiff and in one section, that of section 102, Division "E" makes a difference in favor of the contractor of over $4,000. He was submitted to a long, tedious and searching cross-examination and his whole testimony bears the impress of truth and a candid statement of facts with which he seems as an expert to be perfectly familiar. The witnesses for the defense in this case who are competent experts and equally as candid no doubt in their statements, show a disagreement among themselves as to the estimates and classification of the work and materials as throws doubt as to the correctness of their judgments in this particular. If the resident engineers had been left to determine the character of the work as it progressed and to make out their own estimates and classifications there would have been but little difference doubtless between them and the contractor, but those of the engineers who had the final supervision seemed to disregard the views of their subordinates and while they may be correct the question presented in this case is, Does the testimony authorize the judgment? The testimony with reference to the work on each section is of a similar character to that already alluded to, and while the appellee's claim is for evidently more than he is entitled to recover we are not prepared to say that the judgment rendered exceeds the amount to which appellee is in law entitled to have. The issue presents simply a question of fact for the court or jury to determine and while we see no fraud on the part of the engineers of the company or any evidence conducing to show bad faith, the court below has said upon the testimony the

plaintiff is entitled to a judgment. Nor is it insisted by counsel for the appellant that there is no evidence upon which to base this judgment, but on the contrary the attempt has been to demonstrate only that the weight of the testimony is with the defendant. If the chief engineer's certificate of the estimates is to control this case there would be but little difficulty in the way of defeating the recovery. But the facts of this record indicate clearly that such was not the intention of the parties. The company had placed with these contractors and sub-contractors its own engineer to watch and report the progress of the work and to approve the work as it progressed, and to adjudge that the principal engineer acting in good faith or arbitrarily could determine that his own estimates and classification could not be questioned because final, would be a perversion of the plain intention and meaning of the agreement between the company and the appellee. While this case should have gone to the commissioner that the testimony might have been considered or the result of the calculations of the engineer on each section presented in arithmetical form, still neither party has asked it, and the mere weight of the testimony is not sufficient in a case like this to authorize a reversal.

The contractor as the work progressed was compelled to accept the estimates made by the civil engineer or abandon his contract. No other alternative was left but to take the sum constituting the monthly estimate or nothing.

It is not to be presumed that the contractor had the means on hand outside of what was due him for his work, so as to enable him to proceed with his employes in the execution of the contract without drawing his monthly estimate. He had by asserting his right to pay for certain work and in differing with the engineers as to the value and classification of the work done, notified them of his objections to their valuation and the fact that he obtained his monthly pay is neither persuasive nor conclusive in this case of the fact that the judgment of the chief engineer was right and proper in the premises.

There was some question made in the argument of this case as to the necessity of a demand from the company of this money. The case has heretofore been in this court and reversed because no demand had been made. By the terms of the contract it was stipulated that the price of the work should be paid at the office of the appellant in Cincinnati in cash or in bonds at their option and this court held that a demand was necessary. When the case went back a demand

was made and although for more than the appellee recovered or for more than he was entitled to recover still the sum recovered exceeded the amount the appellant proposed to pay and a resort to an action at law or in equity was necessary to enable the party to recover. He had the right to demand a greater sum than was admitted to be due if he believed he was entitled to it and the appellant the right to pay what it conceived to be the true amount of appellee's claim. We do not place the right of recovery in this case on either the ground of fraud or mistake but adjudge it to be an action on a contract to recover the contract price for the work and labor done and performed under it.

The estimate of the engineer made as the work progressed was only the approximate value of the work done, and when the final estimate was returned the question presented was, Is it correct or erroneous, and in the absence of any allegation of fraud or mistake was he entitled to recover if the facts authorized it?

The fact that the accounts are confused or complicated will not authorize a Court of Equity to take jurisdiction and try the case as a proceeding in equity as this court has decided.

It may be urged, however, that the contractor has asked the chancellor to correct the estimates made by the chief engineer on the ground of fraud or mistake or by reason of their being erroneous. Suppose the chancellor finds no fraud or mistake but simply finds that neither the estimate made by the plaintiff nor the defendant is correct, but assumes from the testimony that the appellee is entitled to recover; that the one estimate is too low and the other too high. We perceive no reason in such a case why the chancellor should not render a judgment. It is not really a question whether the contract is to be changed or extra work paid for, but the question is, Has the appellee been paid for his work and labor at the prices agreed upon by the contract? The chief engineer then becomes a witness like any other expert, or person familiar with the character of the work done. You find testifying in this case for the plaintiff, Duke, Rhaoul, Dickman, E. Cummings the appellee, T. G. Bradford, Henry Bradford, Russell Bradford, Engle, Wright, etc., while as many or more testify for the defense.

We have read this record or the testimony applying to each section and the proof is in effect the same, being confined to quantity, value and classification, and we perceive no reason for disturbing

the judgment when considered at or in equity, the work having been received, the only issue being, was the appellee paid in accordance with his contract? Nor is this case as presented divested of all equitable jurisdiction.

The appellee agreed to execute first class masonry work containing in all about 100 cubic yards at $9.50 per yard on sections 95 and 102. This the proof shows was for a much less sum than the work was worth, but seeing from the specifications made by the engineers of the appellant, the appellee alleges that he was induced to construct this much of the masonry for less than its value in order that his bid might be lessened on the whole work. It is true there is a provision in the contract to the effect that the information derived from the specifications and schedules shall be no protection to the contractor, but that he must assume all risks, but nevertheless he had the right to look to the report of the engineers as approximating only the quantity and character of the work to be done. They had estimated the work, its character and quantity and while exact specifications could not be made the report of the engineer was necessarily a guide to the contractor. While nothing but a glaring mistake would be sufficient to authorize the chancellor to interpose by reason of the contract between the parties, still in this case when the contractor undertook the execution of his work and found that the quantity of first-class masonry on the two sections amounted to 2,733 cubic yards instead of 100, the calculation made by the engineers and the contractor shows such a gross mistake that equity would and ought to relieve. One might be willing to execute a small amount or quantity of such work for much less than he would if the entire work was first class masonry and from the proof such were the influences operating on the mind of the contractor at the time he made his bid with the advertisement and plans of the work before him. Other matters might be suggested with reference to the particular items of work for which increased compensation is asked, and while no basis for calculation has been furnished except by the litigants themselves, the chancellor below has in our opinion rendered a judgment that is just and equitable between these parties.

Judgment *affirmed* on original and cross appeal.

*W. Lindsay, C. B. Simrall, McKee & Finnell, for appellant.*

*John W. Stevenson, O'Hara & Bryan, for appellee.*

[Cited, in *Simrall v. City of Covington,* 16 Ky. L. 774, 29 S. W.

880; *I. C. R. R. Co. v. Manion,* 113 Ky. 13, 23 Ky. L. 2267, 67 S. W. 40; *City of Covington v. Limerick,* 19 Ky. L. 333, 40 S. W. 254.]